IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CR-97-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| BRIAN KEITH TATE | ) | |

This cause comes before the Court on defendant's motion to suppress evidence seized from defendant on January 20, 2013. A hearing was held on the pending motion before the undersigned on June 5, 2013, at Raleigh, North Carolina. For the reasons discussed below, defendant's motion is denied.

BACKGROUND

Defendant is charged in a one-count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. The facts and circumstances giving rise to the indictment are as follows. Just after midnight on June 20, 2013, two officers with the Fayetteville Police Department, Officers Pittman and Smith, on routine patrol in separate squad cars noticed a disabled vehicle in the right lane of a heavily traveled roadway. Both officers stopped to assist the stranded motorist, eventually pushing the vehicle out of the roadway and into a parking lot. When asking defendant, who was present with the vehicle, what had happened, Officer Pittman noticed that defendant's speech was slightly slurred, that defendant's behavior was somewhat erratic as he hopped in and out of the vehicle, and that he made incoherent statements. Officer Smith noticed that defendant had some trouble walking and

appeared to be behaving as if he might flee; defendant kept looking back at Officer Smith while she and Officer Pittman were pushing the vehicle out of the roadway.

After pushing the vehicle out of the roadway, Officer Pittman asked defendant if he was alright and whether defendant had been drinking. Defendant respond that he had been, but stated that a friend had been driving the car. When asked about the friend's whereabouts, defendant stated that his friend had fled after the vehicle had run out of gas. As Officer Pittman and defendant were discussing whether or not defendant had been driving, Officer Pittman asked defendant for his drivers license. Defendant eventually admitted to having been the driver of the vehicle and handed Officer Pittman his identification card.

After checking defendant's identification against law enforcement databases, it was revealed that an outstanding order for arrest had been issued for defendant from Hoke County. Officer Pittman then arrested defendant, and a search incident to that arrest revealed a magazine with .45 caliber bullets in defendant's pocket. Defendant admitted that there was a gun under the front seat of the vehicle in response to questioning about the magazine, which was confirmed by a search of the vehicle. It was also determined that defendant's drivers license had been revoked, that the license plates did not match the vehicle, and that defendant is a convicted felon.

## DISCUSSION

Defendant contends that, while his encounter with the officers began as consensual, it became a seizure when defendant was not free to leave and was unable to terminate the encounter. Defendant further contends that the officers did not have a reasonable articulable suspicion that defendant was engaged in criminal activity sufficient to support the seizure.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const.

2

Amend. IV. The Fourth Amendment is not implicated during a routine police-citizen encounter wherein police officers approach someone in a public place to speak with them. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "A person is seized by the police and thus entitled to challenge the government's actions under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 524 (2007) (internal quotations and citations omitted). A court considers the totality of the circumstances when determining whether the police conduct would have caused a reasonable person to believe he was not free to leave. *Bostick*, 501 U.S. at 439. Specific factors a court may consider are the number of police at the scene, whether the officers were in uniform, the language and tone used by the officers, and whether, if an officer requested official identification, the officer promptly returned it. *United States v. Black*, 707 F.3d 531, 537-38 (4th Cir. 2013).

Here, the police officers were engaged not in an investigatory stop, but in their community caretaking function when they encountered defendant. Defendant was standing in a busy roadway with a disabled vehicle blocking traffic; both officers testified that, although the stop occurred in the early hours of the morning, that particular roadway was well-traveled. The officers put themselves at risk when they parked their own vehicles in the roadway and pushed defendant's vehicle out of the roadway and into a parking area so that he could safely access a gas station. Such community caretaking functions are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).

As they were engaged in their community caretaking function, these officers were

3

permitted a slight intrusion into defendant's privacy in order to ascertain who he was and whether he had a way to restart the vehicle or otherwise leave the scene safely. The officers were also permitted to determine whether defendant would be lawfully able to drive the disabled vehicle once gasoline had been procured and whether he would be able to operate the vehicle safely.

Asking for defendant's drivers license and inquiring whether defendant had been drinking after defendant, the lone person with the vehicle, had exhibited signs that he was intoxicated and had admitted that he had been drinking was clearly within the officers' province and duties as community caretakers, in addition to being in the public's interest in maintaining safe roadways, sufficient to outweigh any slight intrusion into defendant's privacy. Indeed, such an intrusion was necessary in order for the police to insure both that defendant's safety would be maintained and that they would not be assisting a potential threat to public safety to gain access to the roadway. *See State v. Ellenbecker*, 159 Wis.2d 91, 96-97 (1990). After obtaining defendant's identification, the officers learned that defendant had an outstanding warrant for his arrest and arrested him with probable cause to do so. Defendant does not challenge his arrest for an outstanding warrant.

Having considered the totality of the circumstances, the Court finds that defendant was not seized by the police officers prior to his arrest. Even assuming, however, *arguendo*, that defendant was seized prior to his arrest, such seizure occurred only when Officer Pittman did not return defendant's identification immediately. *See Black*, 707 F.3d 538. The police-citizen encounter in this matter began as consensual, only two officers were present at the scene, their tones of voice and language used were calm and non-threatening and would not indicate to a reasonable person that he was not free to leave, defendant was never told he could not leave, and neither defendant's person nor his vehicle were ever blocked from accessing an exit route. *Id.*

4

Therefore, assuming for the sake of argument that defendant was seized prior to his arrest, the Court next considers whether the officers have demonstrated that they had a reasonable articulable suspicion sufficient to support such a seizure.

A legitimate and restrained investigative stop by police is subject to limited Fourth Amendment scrutiny. *Terry v. Ohio*, 392 U.S. 1, 13 (1968). In order to justify such an intrusion into the constitutionally protected interests of a private citizen, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. That is to say, such curtailment of a person's liberty must be supported by a reasonable and articulable suspicion that the person is engaged in criminal activity. *Reid v. Georgia*, 448 U.S. 438, 440 (1980).

Officer Pittman and Officer Smith, both in their written investigative reports and their testimony at the hearing, cited to numerous facts that support their having had a reasonable articulable suspicion that criminal activity was afoot. Prior to being asked for his identification, defendant exhibited slurred speech, made incoherent statements, had difficultly walking, and behaved in such a way that Officer Smith, a long-experienced police officer, believed defendant might attempt to flee. Defendant also admitted to having been drinking "too much" prior to being asked for his identification. Though defendant at first contended that a friend who fled had been driving the vehicle, it was reasonable for Officer Pittman to assume, based on the fact that defendant was the only person with the vehicle when he arrived and defendant's earlier-exhibited erratic behavior, that defendant might be lying about whether he was operating the vehicle when it ran out of gas.

All of the foregoing facts, when taken together along with the rational inferences that

5

could be drawn from them, support a finding that the officers had a reasonable and articulable suspicion that defendant was engaged in criminal activity. Because the Court finds that defendant was not seized prior to his arrest, and finds alternatively that a reasonable articulable suspicion supports any seizure of defendant that did occur prior to his arrest, no Fourth Amendment violation has occurred and defendant's motion to suppress is denied.

## CONCLUSION

For the reasons discussed above, defendant's motion to suppress [DE 21] is DENIED.

SO ORDERED, this __16__ day of June, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE